IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

VICKI CRISWELL,

                Plaintiff,

v.                                                      1:08-cv-1686-WSD

INTELLIRISK MANAGEMENT
CORPORATION, INC. and
ALLIED INTERSTATE, INC.,

                Defendant.

## OPINION AND ORDER

This matter is before the Court on Intellirisk Management Corporation, Inc.'s and Allied Interstate, Inc.'s ("Defendants") Motion for Judgment as a Matter of Law [112] (the "Motion").

### I.    BACKGROUND

This is a civil case for breach of contract.  Plaintiff Vicki Criswell ("Plaintiff") claims that Defendants breached an oral contract to (1) pay Plaintiff a bonus equal to twenty percent (20%) of the profits derived from a new contract with the Treasury Department, and (2) to provide her with stock options to purchase up to 550 shares of stock at $10.00 per share.  Plaintiff seeks damages for breach of contract and attorneys' fees under Ga. Code Ann. § 13-6-11.

Trial in this case began on April 13, 2015, and Plaintiff finished her case-in-chief on April 14, 2015. At the end of Plaintiff's case-in-chief, Defendants filed their Motion, and orally moved the Court for judgment as a matter of law.

Defendants assert that they are entitled to judgment as a matter of law on Plaintiff's breach of contract claims because: (1) the oral contract is barred by the Statute of Frauds; (2) the oral contract is an unenforceable future promise; (3) there was no meeting of the minds as to whether Plaintiff would have permanent employment during the term of the Treasury contract; and (4) the contract is a nullity. Defendants next assert they are entitled to judgment as a matter of law because Plaintiff failed to present evidence upon which the jury could calculate damages with reasonable certainty. Defendants assert further they are entitled to judgment as a matter of law on Plaintiff's claim for attorneys' fees because there is a bona fide controversy.

## II.   DISCUSSION

### A.   Legal Standard

Rule 50(a) of the Federal Rules of Civil Procedure provides:

> If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may:
>    (A) resolve the issue against the party; and
>    (B) grant a motion for judgment as a matter of law against the
>        party on a claim or defense that, under the controlling law, can

>     be maintained or defeated only with a favorable finding on that
>     issue.

Fed. R. Civ. P. 50(a)(1).

To grant a motion under Rule 50, the Court must find "'there is no legally sufficient evidentiary basis for a reasonable jury to find' for the non-moving party." Chaney v. City of Orlando, 483 F.3d 1221, 1227 (11th Cir. 2007) (quoting Lipphardt v. Durango Steakhouse of Brandon, Inc., 267 F.3d 1183, 1186 (11th Cir. 2001)). In considering a Rule 50 motion, the Court focuses on the sufficiency of the evidence. Id. The Court must "review all of the evidence in the record and must draw all reasonable inferences in favor of the nonmoving party." Cleveland v. Home Shopping Network, Inc., 369 F.3d 1189, 1192–93 (11th Cir. 2004). Credibility determinations, the drawing of inferences, and the weighing of competing evidence are functions for the jury, not the Court. Id. at 1193.

    B.    Analysis

        1.    Liability

Defendants assert that they are entitled to judgment as a matter of law on Plaintiff's breach of contract claims because: (1) the oral contract is barred by the Statute of Frauds; (2) the oral contract is an unenforceable future promise; (3) there was no meeting of the minds as to whether Plaintiff would have permanent

employment during the term of the Treasury contract; and (4) the contract is a nullity.

              a)      <u>Statute of Frauds</u>

Defendants assert that Plaintiff's oral contract is barred by the Statute of Frauds because it could not be performed within one year from the making. The Statute of Frauds provides, in part:

> To make the following obligations binding on the promisor, the promise must be in writing and signed by the party to be charged therewith or some person lawfully authorized by him: . . . [a]ny agreement that is not to be performed within one year from the making thereof.

Ga. Code Ann. § 13-5-30(5).

Plaintiff asserts that the Statute of Frauds does not apply, because Plaintiff's agreement could be terminated at-will, and because there are two exceptions to the Statute of Frauds that make it inapplicable here. Ga. Code Ann. § 13-5-31 provides, in part:

> The provisions of Code Section 13-5-30 do not [apply] . . . (2) Where there has been performance on one side, accepted by the other in accordance with the contract; [or](3) Where there has been such part performance of the contract as would render it a fraud of the party refusing to comply if the court did not compel a performance.

Ga. Code Ann. § 13-5-31(2), (3).

Plaintiff provided testimony that her oral contract consisted of her promise to remain employed by Defendants to help them procure and manage the Treasury Department contract, in exchange for the bonuses and stock options she claims she was promised. Plaintiff testified that she continued her employment with Defendants based on payment promises she claims she received. Viewing the evidence in the record, and drawing all reasonable inferences in favor of Plaintiff, the Court concludes at this point of the trial that Plaintiff has provided a legally sufficient evidentiary basis to support a conclusion that she either partially or fully performed her obligations under the alleged oral contract, and that, accordingly, the Statute of Frauds may not bar the enforcement of the alleged oral contract. The Court does not find that "'there is no legally sufficient evidentiary basis for a reasonable jury to find' for the non-moving party." Chaney, 483 F.3d at 1227. The Motion on this ground is denied.

      b)    Future Promise

Defendants assert that Plaintiff's oral contract is an unenforceable future promise, because it was entered into during her employment with Defendants and constituted a promise to pay compensation in the future.

Georgia courts have consistently held "[t]o be enforceable, a promise of future compensation must be made at the beginning of the employment" and that

"a promise to pay a bonus in the future is not enforceable under a terminable-at-will employment contract." Arby's, Inc. v. Cooper, 454 S.E.2d 488, 489 (Ga. 1995); Stover v. Candle Corp. of Am., 520 S.E.2d 7, 9 (Ga. Ct. App. 1999). These cases, and those cited by Defendants, are not directly on point, because they involve bonuses promised to employees that were not yet earned. Where a bonus for work has been agreed to, even in an at-will employment relationship, "the employer is not at liberty to change the agreed rate of pay after the associated work has been performed." See Cox v. Erwin, 541 S.E.2d 69, 71 (Ga. Ct. App. 2000). Plaintiff testified that the agreement she claims she entered into with Defendants was to induce her to remain employed, which, in effect, renders this the equivalent of a promise of future compensation being made at the beginning of the employment.[1]

The Court concludes that Plaintiff has provided sufficient evidence to support a conclusion that the alleged oral contract was not an unenforceable promise of future compensation, and the Motion is denied on this grounds.

---

[1] A plaintiff that promises to remain employed for the benefit of the employer, especially where the employer seeks to retain the employee for a specific task or to provide a specific benefit, can provide consideration to the employer in exchange for whatever compensation or other benefits the employer agrees to provide the employee for their continuing employment.

c) <u>Meeting of the Minds and Nullity</u>

Defendants contend there was no "meeting of the minds" whether Plaintiff would have permanent employment during the term of the contract with the Treasury Department, and, accordingly, Defendants are entitled to judgment as a matter of law.  Defendants also assert that, because Plaintiff testified that Mr. Gale informed her that someone else would negotiate the stock option part of the contract with her in the future, the contract's terms had not been agreed upon and the contract to enter into a contract in the future is a nullity.

"To constitute a valid contract, there must be parties able to contract, a consideration moving to the contract, the assent of the parties to the terms of the contract, and a subject matter upon which the contract can operate."  Ga. Code Ann. § 13-3-1.  Under Georgia law, "unless all terms and conditions are agreed upon and nothing is left to future negotiations, a contract to enter into a contract in the future is a nullity."  <u>Am. Viking Contractors, Inc. v. Scribner Equip. Co.</u>, 745 F.2d 1365, 1369-70 (11th Cir. 1984).[2]  The Court defers its decision on these grounds.

---

[2] Plaintiff, in her Response in Opposition [11] to the Motion, did not address these arguments.

7

2.   Damages

Under Georgia law, damages must be proved by evidence which furnishes the jury with sufficient data to enable them to calculate the amount with reasonable certainty, and cannot be left to speculation, conjecture and guesswork.  E.g., John Thurmond & Associates, Inc. v. Kennedy, 668 S.E.2d 666, 670 (Ga. 2008); Legacy Acad., Inc. v. Mamilove, LLC, 761 S.E.2d 880, 893 (Ga. App. Ct. 2014).

Defendants assert that Plaintiff failed to prove damages with reasonable certainty.  Defendants assert that Plaintiff did not provide the jury with information regarding revenue or expenses from January 2002 to July 2004 for the Treasury contract, and did not provide any evidence to support her damages calculation for her stock option claim.

a)   Bonus

Plaintiff testified that, under the oral contract she allegedly entered into with Defendants, she was entitled to a bonus equal to twenty percent (20%) of the "profits" derived from a new contract with the Treasury Department.  Plaintiff claimed the "profit" upon which her bonus was to be calculated was the amount of revenue Defendants received from the Treasury Department contract minus the direct costs attributable to the Government division in which she worked.  Plaintiff testified that she reviewed reports detailing the amount of revenue the Treasury

Department generated for Defendants, and testified this amount over the period for which she claims she is entitled to a bonus was over $7 million.

On the question of the costs to be deducted from revenues to determine the "profit" for bonus calculation purposes, the evidence presented by Plaintiff was scant. She testified that while she remembered "performance periods," she did not remember the specific revenue or expenses for any month. When asked for clarification on her recollection on redirect, she testified further that she did not remember total monthly direct costs during the period for which she states she is entitled to bonus amounts. When asked if she at some time did have access to costs information, she responded "always," but did not provide any specific costs information and did not state she used or remembered this information to calculate her alleged bonus amount. On direct examination Plaintiff conclusorily stated her bonus claim. Plaintiff recalled receiving bonuses during the period from January 2002 to July 2004, in the amount of $104,500. Plaintiff testified she was not seeking this bonus amount but instead was seeking only the difference from what she believes is owed to her under the "20% of profit" agreement she claims she had and the $104,500 in bonuses she actually received. Plaintiff stated the amount of bonus compensation she claims she is owed is $565,000. In providing this amount,

Plaintiff did not provide the amount of total bonus she was owed or the basis for determining it.  She simply stated this was the amount she claimed.

The thin evidence on which Plaintiff's bonus claim is based is problematic.  The Court does not have the benefit of the final transcript of Plaintiff's testimony.  Recalling the testimony is particularly difficult because of the disjointed presentation of it and Plaintiff's often rambling answers and self-serving commentary, to which there was no objection.  The Court acknowledges its responsibility to grant a directed verdict motion where it can.  The Court, based on the record developed during Plaintiff's case-in-chief, including Plaintiff's decision not to present traditional damages evidence, simply cannot find at this time that the jury would not have a legally sufficient basis to find for Plaintiff on this issue.  That is not to say that Plaintiff does have a legally sufficient basis for a jury to find for Plaintiff on this issue, or that the Court may later find that the Motion should be granted.  At this point, however, the Court decides to proceed with Defendants' case, reserving consideration of the Motion on this ground.

      b)    <u>Stock Option</u>

Plaintiff testified that the stock option to which she claims she was entitled provided her with a right to exercise an option to purchase 550 shares of stock.  The cost was $10.00 to purchase option shares.  Plaintiff testified that the stock

option was valued at $242,000.  When she explained this valuation, Plaintiff conceded that she did not know if any other people exercised their options or made any money on them.  Plaintiff stated she understood that there would be an initial public offering of Defendants' stock that would make them valuable.

Plaintiff did not present any evidence to show that an initial public offering ever took place.  Plaintiff did not present any evidence regarding the market value of the shares to support her valuation of the shares or that they had any value at all.  Plaintiff did not present any evidence that the stock was ever offered to the public, whether by an initial public offering or though some other mechanism.  Plaintiff did not present any evidence of the value of Defendants' stock, and certainly did not present any evidence that had she purchased any stock at $10.00 per share, it would have been worth more than that purchase price at some point.  Plaintiff admitted she did not know the value of the stock at any time.

Plaintiff did not present any evidence of value based on an initial public offering or the day-to-day sale of Defendants' stock on a stock exchange.  Plaintiff did not submit any evidence of the fair market value of the shares of stock as assessed by Defendants to repurchase the shares pursuant to Section 9(a)(2) of the IRMC Holdings, Inc. Stock Option Plan, or when, if ever, an employee choose to resell his or her shares pursuant to Paragraph Two of Annex I of the Plan.

Plaintiff, in short, did not present any evidence of the valuation of the stock, other than her unsupported statement that the stock was "in her mind" valued at $242,000, based on a comment by another employee of Defendants about the stock price potential from a potential future increase in the price of the shares.

The Court notes further that Section 5(b) of the IRMC Holdings, Inc. Stock Option Plan provides that each option will vest and become exercisable only with respect to twenty percent (20%) of the shares of stock subject to the option immediately on the date of the grant of the option, and with respect to twenty percent (20%) of the stock subject to the option on the first, second, third, and fourth, anniversaries, respectively, of the date of the grant of the option.  Plaintiff provided no evidence detailing what twenty percent (20%) of the 550 shares would have been worth when she was granted the option, and what the shares would have been worth on each anniversary when an additional twenty percent (20%) of the shares could be purchased for $10.00 per share.  The value of the stock in Plaintiff's mind when she had the discussion with the employee is irrelevant to the value when the options would be exercised under the plan.  Indeed, there is no evidence Plaintiff ever even attempted to exercise an option to purchase shares at the times allowed under the plan.

Without any evidence regarding the value of the stock, the jury does not have sufficient data to enable them to calculate the value of the stock and, through that, the value of stock options.  There is no evidence to allow the jury to determine the damages that resulted from the breach of contract Plaintiff alleges.  Georgia law is clear that the jury's calculation of damages cannot be left to speculation, conjecture or guesswork.  E.g., John Thurmond, 668 S.E.2d at 670.

The Court concludes that Plaintiff failed to present sufficient evidence to allow the jury to conclude that she suffered damages from Defendants' alleged breach of the stock option agreement, and concludes that "'there is no legally sufficient evidentiary basis for a reasonable jury to find' for the non-moving party," and grants the Motion on Plaintiff's breach of contract claim related to the stock options—Count Two of Plaintiff's Complaint.  See Chaney, 483 F.3d at 1227.

        3.    Attorneys' Fees

Defendants assert they are entitled to judgment as a matter of law on Plaintiff's claim for attorneys' fees because there is a bona fide controversy regarding whether an enforceable oral contract existed.  Defendants assert that, because there is a bona fide controversy, Plaintiff cannot establish as a matter of law that Defendants acted in bad faith or were stubbornly litigious.

Georgia law provides that the "expenses of litigation generally shall not be allowed as a part of the damages; but where the plaintiff has specially pleaded and has made prayer therefor and where the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense, the jury may allow them." Ga. Code Ann. § 13-6-11.

        a)        <u>Stubbornly Litigious</u>

Recovery for stubborn litigiousness or unnecessary trouble is authorized only if there is "no bona fide controversy or dispute regarding liability for the underlying cause of action." <u>Powell Co. v. McGarey Grp., LLC</u>, 508 F. Supp. 2d 1202, 1220 (N.D. Ga. 2007). "[A] refusal to pay a disputed claim does not constitute stubborn litigiousness, nor will it support a claim that defendants caused the plaintiff unnecessary trouble and expense." <u>Id.</u> "While issues of stubborn litigiousness are normally for the jury, if there is a *bona fide* controversy, there can be no stubborn litigiousness as a matter of law." <u>Nextel S. Corp. v. R.A. Clark Consulting, Ltd.</u>, 596 S.E.2d 416, 420 (Ga. Ct. App. 2004) (quoting <u>Grange Mut. Cas. Co. v. Kay</u>, 589 S.E.2d 711, 716 (Ga. Ct. App. 2003)).

The Court, having reviewed the evidence in favor of Plaintiff, concludes as a matter of law that a bona fide controversy exists regarding: (1) the existence of an enforceable oral contract; and (2) what bonus, if any, Plaintiff may have been

14

entitled to under the alleged contract. Defendant has raised several defenses, such as the failure of contract for formation, to dispute Plaintiff's breach of contract claims, and the Court concludes that, even if Plaintiff ultimately prevails on her breach of contract claims, a bona fide controversy existed throughout this litigation. The Court, accordingly, grants the Motion with regard to Plaintiff's claim for attorneys' fees based upon allegations that Defendants have been stubbornly litigious. See Nextel, 596 S.E.2d at 420.

      b)    Bad Faith

"Bad faith is bad faith connected with the transaction and dealings out of which the cause of action arose, rather than bad faith in defending or resisting the claim after the cause of action has already arisen." Kin Chun Chung v. JPMorgan Chase Bank, N.A., 975 F. Supp. 2d 1333, 1351 (N.D. Ga. 2013); see also Trickett v. Advanced Neuromodulation Sys., Inc., 542 F. Supp. 2d 1338, 1355 (S.D. Ga. 2008) ("In contract actions 'bad faith referred to in the code is not bad faith in refusing to pay but bad faith in the transaction out of which the cause of action arises.'") (quoting Jordan Bridge Co. v. I.S. Bailey, Jr., Inc., 296 S.E.2d 107, 109 (Ga. Ct. App. 1982)).

"Bad faith requires more than 'bad judgment' or 'negligence,' rather the statute imports a 'dishonest purpose' or some 'moral obliquity' and implies

15

'conscious doing of wrong' and a 'breach of known duty through some motive of interest of ill will.'" Id. Establishing bad faith requires a showing "that the contract was made in bad faith or that the defendant breached the contract as a result of 'some interested or sinister motive.'" APAC–Southeast, Inc. v. Coastal Caisson Corp., 514 F. Supp. 2d 1373, 1382 (N.D. Ga. 2007) (quoting Glen Rest., Inc. v. West, 325 S.E.2d 781, 782 (Ga. Ct. App. 1984)).

"Questions concerning bad faith under this statute are generally for the jury to decide, and the trial court may grant judgment as a matter of law on such issues 'only in the rare case where there is absolutely no evidence to support the award of expenses of litigation . . . .'" Hewitt Associates, LLC v. Rollins, Inc., 708 S.E.2d 697, 702-03 (Ga. Ct. App. 2011) (quoting Mariner Health Care Mgmt. Co. v. Sovereign Healthcare, LLC, 703 S.E.2d 687 (Ga. Ct. App. 2010).

Having concluded that Plaintiff has presented sufficient evidence in her case-in-chief to allow a jury to conclude that an oral contract existed between the parties Defendants may have breached, the Court cannot, at this point, conclude, viewing all evidence in the record in favor of Plaintiff, that "there is absolutely no evidence to support the award of expenses of litigation[.]" See Hewitt, 708 S.E.2d

at 702-03. The Court denies the Motion with regard to Plaintiff's claim for attorneys' fees for Defendants' alleged bad faith.[3]

## III. CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Defendants' Motion for Judgment as a Matter of Law [112] is **GRANTED IN PART** and **DENIED IN PART**. It is **GRANTED** with respect to: (1) Plaintiff's claim for damages stemming from Defendants' alleged breach of her stock option agreement, and (2) Plaintiff's claim for attorneys' fees based upon allegations that Defendants have been stubbornly litigious. It is **DENIED** with respect to: (1) Plaintiff's claim for liability on her breach of contract claims based upon the Statute of Frauds and promise of future

---

[3] Defendants cite to Ebco Gen. Agency v. Mitchell, 368 S.E.2d 782, 784 (Ga. Ct. App. 1988) for the proposition that bad faith damages are not recoverable where there exists a bona fide controversy. While the Ebco Court does state that, it appears that the Ebco Court also states that there was no evidence from which the jury could find that the contract was made in bad faith or that it was breached as a result of some sinister motive. The Court interprets this case to mean that, should the jury conclude that there is a legitimate dispute over what, if anything, Defendants owed to Plaintiff, they jury could conclude that Defendant breached the alleged oral agreement, but not in bad faith because of their being a bona fide controversy. The Court does not interpret this to mean that, as a matter of law, the existence of a bona fide controversy requires judgment in Defendants' favor on Plaintiff's claim for attorneys' fees based on Defendants' alleged bad faith.

compensation and (2) Plaintiff's claim for attorneys' fees based upon allegations that Defendants acted in bad faith.

**IT IS FURTHER ORDERED** that the Court defers consideration of Defendants' arguments that they are entitled to judgment as a matter of law because: (1) Plaintiff failed to present legally sufficient evidence to support a claim for damages from the alleged failure to pay her the bonuses to which she claims she is entitled; (2) there was no meeting of the minds; and (3) the contract is a nullity.

**SO ORDERED** this 15th day of April, 2015.

_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE